**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**
**CENTRAL DIVISION**

| | |
|---|---|
| SHAYNE E. TODD,<br><br>    Plaintiff,<br><br>v.<br><br>ALFRED BIGELOW et al.,<br><br>    Defendants. | MEMORANDUM DECISION<br>AND ORDER<br><br><br>Case No. 2:09-CV-808 DAK<br><br>District Judge Dale A. Kimball |

Plaintiff, Shayne E. Todd, an inmate at the Utah State Prison, filed this *pro se* civil rights suit under 42 U.S.C. § 1983.  *See* 42 U.S.C.A. § 1983 (West 2012).  Plaintiff was allowed to proceed *in forma pauperis* under 28 U.S.C. § 1915.  *See* 28 U.S.C.A. § 1915 (West 2012). Before the court are Plaintiff's Motion for Appointment of Counsel and Defendants' Motion for Summary Judgment.

### ANALYSIS

### I. Introduction

Plaintiff's Amended Complaint alleges cruel and unusual punishment under the Eighth Amendment based on Defendants' denial of certain pain medications for Plaintiff's chronic hip and back pain.  The Amended Complaint also alleges denial of due process under the Fifth and Fourteenth Amendments based on inadequate grievance procedures for challenging the denial of medications.  Plaintiff seeks injunctive relief, compensatory and punitive damages, attorney fees, court costs and any additional relief the court deems proper.

On July 27, 2011, Defendants filed a *Martinez* Report (Doc. no. 22) addressing Plaintiff's allegations.¹  Based on the evidence presented in the *Martinez* Report, Defendants now move for summary judgment on each of Plaintiff's claims.  Defendants contend that the discontinuation of certain medications for Plaintiff was based on legitimate concerns about abuse and, therefore, did not violate the Eighth Amendment.  Defendants further assert that even if Plaintiff could show a constitutional violation, Defendants are entitled to qualified immunity because the rights at issue were not clearly established at the time of the allegedly unconstitutional acts.

## II.  Motion for Appointed Counsel

Plaintiff moves for appointed counsel to represent him in this case.  Plaintiff asserts that appointed counsel is warranted based on his lack of legal expertise and limited access to legal materials or assistance.  Plaintiff further asserts that in the event of a trial he would require assistance with presenting evidence and cross-examining witnesses.

It is well established that plaintiffs in civil cases do not have a constitutional right to counsel.  *See Carper v. Deland*, 54 F.3d 613, 616 (10th Cir. 1995); *Bee v. Utah State Prison*, 823 F.2d 397, 399 (10th Cir. 1987).  However, a district court may, in its discretion, appoint counsel for indigent inmates under 28 U.S.C. § 1915(e)(1).  *See* 28 U.S.C.A. § 1915(e)(1) (West 2012); *Carper*, 54 F.3d at 617; *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991).  When deciding whether to appoint counsel, the court considers a variety of factors "including 'the merits of the

---

¹ In *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978), the Tenth Circuit approved the practice of district courts ordering prison administrators to prepare a report to be included with the pleadings in cases where a prisoner alleges a constitutional violation by prison officials.

litigant's claims, the nature of the factual issues raised in the claims, the litigant's ability to present his claims, and the complexity of the legal issues raised by the claims.'" *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995) (quoting *Williams*, 926 F.2d at 996). "The burden is upon the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel." *McCarthy v. Weinberg*, 753 F.2d 836, 838 (10th Cir. 1985).

Weighing the above factors, the court concludes that appointment of counsel is not necessary here. The factual issues raised here are not complex and Plaintiff has clearly demonstrated the ability to adequately represent himself at this stage of the litigation. Moreover, should a trial become necessary the court will reevaluate the need for counsel at the appropriate time. Thus, Plaintiff's Motion for Appointment of Counsel is denied.

### III. Summary Judgement Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses," *Cellotex v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553 (1986), thus, "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought." Fed. R. Civ. P. 56(a).

The party moving for summary judgment bears the initial burden of showing "that there is an absence of evidence to support the non-moving party's case." *Cellotex*, 477 U.S. at 325. This

burden may be met merely by identifying portions of the record which show an absence of evidence to support an essential element of the opposing party's case. *Johnson v. City of Bountiful*, 996 F. Supp 1100, 1102 (D. Utah 1998). Once the moving party satisfies its initial burden "the burden then shifts to the nonmoving party to make a showing sufficient to establish that there is a genuine issue of material fact regarding the existence of [the disputed] element." *Id.* A fact in dispute is "material" only if it might affect the outcome of the suit under governing law. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). The dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

   A nonmovant "that would bear the burden of persuasion at trial" must "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of a trial from which a rational trier of fact could find for the nonmovant." *Adler v. Wal-Mart Stores*, 144 F.3d 664, 671 (10th Cir. 1998). Mere allegations and references to the pleadings will not suffice, instead, the specific facts put forth by the nonmovant "must be identified by reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein." *Thomas v. Wichita Coca-Cola Bottling*, 968 F.2d 1022, 1024 (10th Cir. 1992). Moreover, "the nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir .1991). The court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir. 1999). Conclusory allegations are given no weight, and

"[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient" to overcome a summary judgment motion. *Anderson*, 477 U.S. at 249, 252.

### IV.  Material Facts[2]

1.     Dr. Bruce O. Burnham is employed by the Utah Department of Corrections ("UDC") as a full-time physician at the Central Utah Correctional Facility ("CUCF") in Gunnison, Utah.  (Burnham Decl. ¶ 4 (Doc. no. 25).)  Dr. Burnham is personally acquainted with Plaintiff and has treated and/or otherwise diagnosed him on several occasions at CUCF.  (Burnham Decl. ¶ 5.)

2.     At the time of the incidents alleged in the Amended Complaint, Steven Hyatt was a nurse assigned to the CUCF prison infirmary.  Nurse Hyatt's duties included giving inmates their medications through the pill line.  (Hyatt Decl. ¶¶ 3-5 (Doc. no. 24).)

3.     On May 2, 2006, CUCF noted that Plaintiff suffered from chronic right hip pain and had a history of seeking pain medication.  (Todd--CUCF 002 (Doc. no. 22, Exhibit A).)  CUCF medical personnel saw Todd on numerous occasions regarding his chronic hip pain and various other medical concerns.  (Tod--CUCF002-008.)  CUCF tracks inmate medical visits and medications using the M-Track record system.  (Todd--CUCF 009-105.)

4.     Medical providers at CUCF are required under the Utah Controlled Substance Act, Utah Code Ann. § 58-37-1 to -21 (West 2012), to ensure that they do not enable inmates to

---

[2]  The facts presented here are drawn primarily from the Memorandum in Support of Defendants' Motion for Summary Judgment (Doc. no. 27).  Except as noted herein, these facts are undisputed.

abuse controlled substances and other drugs.  (Burnham Decl. ¶ 6.)

     5.     One of the methods used to ensure that inmates do not abuse prescription medications is to require medical technicians ("med techs") or other medical staff to observe inmates swallow their pills when administered during pill line.  (Burnham Decl. ¶ 7; Todd--CUCF 496-500.)  Employees who distribute medication at pill line are required to observe inmates swallow their medication.  If the inmate refuses to swallow the medication, the med tech is required to report this information to medical staff.  (Burnham Decl. ¶ 8.)

     6.     On or about February 25, 2008, Plaintiff came through the pill line to receive his evening dose of Gabapentin (aka Neurontin) which had been prescribed for his hip pain.  (Hyatt Decl. ¶ 7; Todd--CUCF 216; Burnham Decl. ¶ 11.)  Plaintiff's prescription was for three Neurontin 300mg tablets.  (Hyatt Decl. ¶ 8; Todd--CUCF 216.)  Neurontin is a neuropathic pain reliever which has been known to be abused by inmates.  (Hyatt Decl. ¶¶ 9, 14; Todd--CUCF 365, 378.)

     7.     While administering the pill line on February 25, 2008, Nurse Hyatt handed Plaintiff his evening dose of Neurontin with water and then checked Plaintiff's mouth to make sure he had swallowed the pills.  (Hyatt Dec. ¶¶ 10-11; CUCF--Todd 216.)  Nurse Hyatt discovered that Plaintiff had not swallowed the pills but was "cheeking" them.  (Hyatt Dec. ¶ 12; Burnham Decl. ¶ 12; Todd--CUCF 216.)  "Cheeking" refers to holding the pill in the mouth while pretending to swallow it.  (Burnham Decl. ¶ 13; Hyatt Decl. ¶ 12.)  Nurse Hyatt could see one of the un-swallowed pills in inmate Todd's right cheek.  (Hyatt Decl. ¶ 17; Todd--CUCF 216.)

8. Plaintiff took another drink of water and Nurse Hyatt again had him open his mouth to make sure that he had swallowed the three pills. (Hyatt Dec. ¶ 18; Todd-CUCF 000216.) Nurse Hyatt again discovered that Plaintiff had not swallowed the pills, but had them tucked under his upper lip. (Hyatt Decl. ¶ 19; Todd--CUCF 216.)

9. According to protocol, Nurse Hyatt had Plaintiff spit the three un-swallowed pills out of his mouth into a cup, Nurse Hyatt then notified the physician. (Hyatt Decl. ¶ 20; Todd--CUCF 216.)

10. Plaintiff later admitted to not swallowing his three Neurontin pills on February 25, 2008. (Compl. ¶ 48. (Doc. no. 10).)

11. Dr. Burnham was notified of this "cheeking" incident and on or about February 26, 2008, he discontinued Plaintiff's Gabapentin prescription. (Burnham Decl. ¶ 14; Todd--CUCF 216.)

12. After the "cheeking" incident Plaintiff was seen by CUCF medical personnel on March 5, 2008, by Dr. Okerlund, March 13, 2008, by Nurse Rasmussen, March 18, 2008, by Dr. Okerlund, April 7, 2008, by Nurse Rasmussen, April 15, 2008, by Dr. Burnham, and on May 21, 2008, by Dr. Burnham. (Todd--CUCF 020-028, 200-217.)

13. In a March 3, 2008, memorandum Dr. Garden explained to Plaintiff: "Review of your medical chart indicates that on 02/25/08 you were given two chances to swallow your meds. If you wish to discuss this further, please submit an ICR [inmate care request] and discuss it with a medical provider." (Todd--CUCF 123.)

14. Following Dr. Burnham's review of Plaintiff's medical history, on March 18,

2008, Jason Okerland was instructed to offer Plaintiff Naproxen as an alternative to Neurontin, which Plaintiff refused. (Burnham Decl. ¶ 15; Todd--CUCF 209.)

15. On March 4, 2008, Plaintiff underwent lab testing and observation for hypertension. Plaintiff did not complain of significant pain at that time. (Todd--CUCF 029, 212-216.)

16. On March 5, 2008, Plaintiff met with Dr. Okerlund and requested that his Neurontin prescription be reinstated. (Compl. ¶ 50; Todd--CUCF 028.) Plaintiff was offered Elavil, which he refused, stating that he could not take Elavil due to a chemical reaction in his brain. (Burnham Decl. ¶ 16; Todd--CUCF 209.)

17. Elavil is an accepted and effective treatment for pain which has less potential for abuse than Neurontin. (Burnham Decl. ¶ 17.)

18. On May 21, 2008, Plaintiff accepted a prescription of 50mg of Elavil. (Burnham Decl. ¶ 19; Todd--CUCF 204.)

19. Between February 25, 2008 and May 21, 2008, Plaintiff was seen in the prison infirmary on several occasions, during which he repeatedly asked to have Ultram and Neurontin prescribed to him. (Burnham Decl. ¶ 18.)

20. In response to Plaintiff's ongoing complaints, Dr. Garden reviewed Plaintiff's chart on March 21, 2008, and informed Plaintiff: "Review of your medical chart indicates appropriate treatment and medication orders are in place. If you have continued concerns with the amount of water they give you at pill line, please submit a letter to the CUCF Director of Nursing or file a grievance." (Todd--CUCF 128.)

21. On April 23, 2008, Dr. Garden reviewed Plaintiff's records and again found that appropriate evaluation and treatment notes were charted. Dr. Garden also informed Plaintiff that he would be seen for follow-up in a few weeks, "at which time further consideration will be given to possible medication or specialty clinic recommendations." (Todd--CUCF 132.)

22. On May 8, 2008, Dr. Garden responded to Plaintiff: "Review of your medical chart indicates appropriate evaluation and treatment notes were charted and that your ICR's are being addressed per policy. I do note that we did receive an ICR from you on 5/7/08. You will be scheduled with a medial provider within the next few days. Please address your medical concerns at that time. Any request for medication from a patient does need to be addressed in a medical appointment, not via the mail." (Todd--CUCF 126.)

23. On May 21, 2008, Dr. Burnham examined Plaintiff in regard to his ongoing requests for different pain medication. (Compl. ¶ 55.)

24. On August 4, 2008, Plaintiff underwent a lumbar-spine MRI exam. (Compl. ¶ 56; Todd--CUCF 130.)

25. On February 23, 2009, Dr. Garden again reviewed Plaintiff's case and informed him that his "treatment plan and medication orders are appropriate and have been well documented." (Todd--CUCF 117.)

26. On March 4, 2009, a medical note by Nurse Tuft indicates that Plaintiff would receive a prescription for Clonidin and that they would see about getting him back on Neurontin. (Todd--CUCF 163.)

## V. Cruel and Unusual Punishment

### a. Legal Standard for Denial of Medical Care Claims

In *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285 (1976), the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Estelle*, 429 U.S. at 104 (quoting *Greg v. Georgia*, 428 U.S. 153, 96 S. Ct. 2909 (1976)). "Deliberate indifference involves both an objective and a subjective component." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). The objective component is met if the deprivation is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970 (1994). A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999). The subjective component is met only if a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Allegations of mere negligence in diagnosing or treating a medical condition, *Estelle*, 429 U.S. at 105, or "inadvertent failure to provide adequate medical care," *Riddle v. Mondragon*, 83 F.3d 1197, 1203 (10th Cir. 1996), are insufficient to state a claim under the Eighth Amendment. "Delay in [providing] medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm." *Sealock*, 218 F.3d at 1210. The Tenth Circuit has held that the "substantial harm requirement may be satisfied

by lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman*, 254 F.3d 949, 950 (10th Cir. 2001).

### b. Objective Component: Serious Medical Need

Plaintiff has not presented sufficient evidence to satisfy the objective component of the deliberate indifference standard. Although Plaintiff has presented ample evidence showing that he suffers from chronic hip and back pain, the evidence does not support Plaintiff's contention that his condition is sufficiently serious to mandate long-term prescription pain medication. Plaintiff has not been diagnosed with any medical condition known to cause severe debilitating pain; nor have medical personnel ever observed Plaintiff demonstrating physiological signs or symptoms consistent with such pain. Moreover, Plaintiff's dogged pursuit of Neurontin, coupled with his rejection of other pain medications less susceptible to abuse, is consistent with someone seeking medications for illicit purposes, rather than merely for chronic pain relief. Thus, the court finds that the record does not support the conclusion that Plaintiff's chronic pain was so severe as to constitute a serious medical need under *Farmer*.

### c. Subjective Component: Deliberate Indifference

Even assuming that Plaintiff's condition was sufficiently serious to warrant constitutional protection, the record shows that medical personnel were not deliberately indifferent to Plaintiff's needs, but made reasonable efforts to treat Plaintiff while also guarding against potential drug abuse.

Plaintiff has not presented sufficient evidence to support his contention that Defendants fabricated the "cheeking" incident as a pretext for denying him needed medications. In fact,

Plaintiff admits in his Complaint that he failed to swallow his pills on the date of the incident. Although Plaintiff contends that this failure was due to a lack of sufficient water, the record shows that Plaintiff was given two chances to swallow his pills with water and both times he failed to do so.  There is no evidence that Plaintiff complained about the amount of water provided at the pill line prior to this incident.  Moreover, even accepting Plaintiff's excuse that he couldn't swallow the pills because of insufficient water, the incident provides sufficient justification for Defendants' actions.  Given the type of pills prescribed to Plaintiff and his behavior at the pill line Defendants would have been derelict had they not acted to ensure that Plaintiff was not stockpiling medicine.

The record also shows that Defendants did not completely withdraw all pain medications from Plaintiff following the incident, but instead tried to offer alternative medications that presented less risk for abuse.  Plaintiff's contention that these alternatives were unsuitable or less effective are not sufficient to show deliberate indifference.  It is well-settled that a mere difference of opinion regarding the proper treatment for a medical condition is not sufficient to show deliberate indifference, and medical personnel are entitled to substantial deference in choosing a proper course of treatment.  *See Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980). Moreover, even if Plaintiff is correct that the alternative medications offered were ineffective or caused serious side-effects, the fact that Defendants tried to accommodate Plaintiff shows that they were not indifferent to his needs.

Finally, the overall record here shows that UDC medical staff have been highly solicitous of Plaintiff's needs and have made substantial efforts to ensure Plaintiff's well-being.  Plaintiff's

voluminous prison medical records show numerous medical visits both before and after the "cheeking" incident, including multiple reviews by supervisory medical personnel in response to Plaintiff's ongoing complaints about the change in his medications. The records also show that Plaintiff received costly laboratory and diagnostic testing, including an MRI, to evaluate and monitor his condition. In sum, the record strongly supports Defendants' contention that Plaintiff's care has met or exceeded that which he would have received in a non-prison setting.

Thus, the Court concludes that Plaintiff has not satisfied his burden of showing a genuine issue of material fact as to whether Defendants were deliberately indifferent to Plaintiff's medical needs. Defendants are, therefore, entitled to summary judgment on Plaintiff medical care claims. Because Plaintiff has not shown that Defendants actions violated the Eighth Amendment, the Court need not address whether Defendants are entitled to qualified immunity.

## VI.  Due Process

Plaintiff's Complaint asserts a claim for denial of due process under the Fifth and Fourteenth Amendments based on Defendants' alleged failure to resolve Plaintiff's medical complaints through the prison grievance process. Plaintiff alleges that if Defendants had properly investigated and addressed his grievances regarding the "cheeking" incident his medications would have been restored. This claim is entirely without merit.

The Tenth Circuit has determined that prison grievance procedures do not create a protected liberty interest and, therefore, do not implicate a prisoner's due process rights. *See Murray v. Albany County Bd. of County Comm'rs*, No. 99-8025, 2000 WL 472842, at *2 (10th Cir. Apr. 20, 2000) (unpublished op.) ("[P]rison grievance procedures do not 'give rise to a

protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment.'") (quoting *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993)); *Anderson v. Colorado Department of Corrections*, No. 98-1477, 1999 WL 387163, at *2 (10th Cir. June 14, 1999) (unpublished op.) (holding that a state inmate's § 1983 "allegations relating to the requirements of the Department of Corrections grievance procedure do not support a due process claim because those procedures do not create any liberty interest in the incarcerated petitioner"). Because the prison grievance process does not create a constitutionally protected liberty interest, Plaintiff cannot challenge the sufficiency of those procedures under the Due Process Clause. Thus, Defendants are entitled to summary judgment on this claim.

## ORDER

Based on the forgoing analysis, **IT IS HEREBY ORDERED** that:

(1) Plaintiff's Motion for Appointment of Counsel (Doc. no. 15) is **DENIED**;

(2) Defendants' Motion for Summary Judgment (Doc. no. 26) is **GRANTED**; and,

(3) this case is **CLOSED**.

    DATED this 24th day of February, 2012.

                          BY THE COURT:

                          _____
                          DALE A. KIMBALL
                          United States District Judge